UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| J. ANDREW RAKER,              ) | |
| ) | |
| Plaintiff,            ) | Case No. _____ |
| ) | |
| v.                                                    ) | |
| ) | |
| FREDERICK COUNTY PUBLIC SCHOOLS;  ) | |
| J. RICHARD PLAUGHER, individually     ) | PLAINTIFF'S |
| and in his official capacity as Director of   ) | VERIFIED COMPLAINT |
| Student Support Services for Frederick County  ) | |
| Public Schools; JOSEPH J. SWACK,        ) | |
| individually and in his official capacity as   ) | |
| Principal of Millbrook High School;       ) | JURY DEMAND |
| ) | |
| Defendants.         ) | |
| ) | |

Now comes Plaintiff J. Andrew Raker, and for his complaint against Defendants avers the following:

**I.**

**INTRODUCTION**

1.   This case is brought to vindicate the constitutional rights of Andrew Raker, a senior at Millbrook High School in Winchester, Virginia.  On October 24, 2006, Andrew attempted to communicate a message to his schoolmates regarding the perils of abortion, primarily by the distribution of leaflets and by wearing message-bearing clothing.  The next day, Defendant Joseph Swack, Principal of Millbrook High School, censored Andrew and prohibited him from distributing any more leaflets, because Principal Swack objected to the content of his speech.  Subsequently, Defendant J. Richard Plaugher of the Frederick County Public Schools wrote a letter to Andrew and therein enacted a standardless policy requiring pre-approval of before- or

after-school literature distribution, and an *ad hoc* ban on literature distribution throughout the school day, even outside of class time. These acts of censorship, and Defendants' continuing prohibition which serves to chill Andrew's speech on this matter, violate his rights to freedom of speech, due process of law, and free exercise of religion guaranteed by the First and Fourteenth Amendments to the United States Constitution. Andrew's desire to distribute similar leaflets at school on or around January 22, 2006, presents an urgent need for preliminary injunctive relief.

## II.

## JURISDICTION AND VENUE

2.  The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331, as this action arises under the First and Fourteenth Amendments to the United States Constitution; under 28 U.S.C. § 1343(a)(3), in that it is brought to redress deprivations, under color of state law, of rights, privileges and immunities secured by the United States Constitution; under 28 U.S.C. § 1343(a)(4), in that it seeks to recover damages and secure equitable relief under an Act of Congress, specifically, 42 U.S.C. § 1983, which provides a cause of action for the protection of civil rights; under 42 U.S.C. § 1988(b) to award attorneys fees; under 28 U.S.C. § 2201(a) to secure declaratory relief; and under 28 U.S.C. § 2202 to secure preliminary and permanent injunctive relief and damages.

3.  Venue is proper in the United States District Court for the Western District of Virginia under 28 U.S.C. § 1391(b), because the events giving rise to the claim occurred within the District and because Defendants are residents of or located in the District. Venue is proper in the Harrisonburg Division pursuant to this Court's standing orders because the cause of action arose and the parties are located in Frederick County.

### III.

### IDENTIFICATION OF PLAINTIFF

4.      Plaintiff J. Andrew Raker is an eighteen-year-old student in the twelfth grade of Millbrook High School, and is a resident of Winchester, Virginia.

### IV.

### IDENTIFICATION OF DEFENDANTS

5.      Defendant Frederick County Public Schools ("FCPS") is a public body corporate and politic established, organized, and authorized pursuant to Virginia Law with the authority to sue and be sued.  FCPS's administration office is located at 1415 Amherst Street, Winchester, VA  22604-2546.  Millbrook High School, which provides instruction to students in the ninth through twelfth grades, is an operating extension of FCPS

6.      Defendant J. Richard Plaugher is the Director of Student Support Services for FCPS, and is sued both individually and in his official capacity.

7.      Defendant Joseph J. Swack is Principal of Millbrook High School, and is sued both individually and in his official capacity.

### V.

### STATEMENT OF FACTS

8.      Andrew is a Christian who is impelled by his sincerely held religious and ethical beliefs to share with others, including his fellow students at Millbrook High School, the content of those beliefs.

9.      For religious and ethical reasons, Andrew is opposed to the killing of pre-born children and the harming of women that occurs in the abortion procedure.

10.     On October 24, 2006, Andrew came to the school prepared to speak out against

abortion, in conjunction with a nationwide project called the "3rd Annual Pro-Life Day of Silent Solidarity," organized by the national group "Stand True."

11.     As a participant in the Pro-Life Day of Silent Solidarity, Andrew engaged in written and symbolic communication as an act of solidarity with the silenced voices of pre-born abortion victims.  Andrew engaged in substantially similar activities at Millbrook High School in 2004 and 2005 as well, including literature distribution, and no disruption ensued.

12.     One of Andrew's modes of communication on October 24, 2006, was the free distribution at school during non-instructional time of small fliers which contain text advocating against abortion and describing prenatal development.

13.     The front side of each such flier displays a drawing of a toddler's face, and reads:

She's A Child Not A Choice<br>Why I AM Silent

> Every day in the United States of America over 4,000 American citizens are silenced against their wills. They have their voices permanently silenced and they never get the opportunity to speak on behalf of themselves.  Today we stand in silent solidarity with those who have been silenced. Today we are silent, but by doing this we are being a voice for the one-third of our generation that will never have a voice.

> These victims are not only being silenced; they are being killed. The victims we stand on behalf of are not going to be mentioned on the news. The victims we stand on behalf of will not have a funeral. The victims we stand on behalf of were ripped from the safety and warmth of their mothers' wombs. The victims we stand on behalf of were not blobs of tissue, but beautiful human persons, with hearts that beat, brains that gave out brain waves, and a soul. These are the victims of the abortion holocaust.

> Every day over 4,000 babies have their lives ended in the name of choice. Since January 22, 1973, over 46 million babies have died. The time is now to stand on behalf of these innocent victims. Visit www.standtrue.com to find out how to be a voice.

The back side of the flier reads:

4

A few life development Facts

20 days:   Foundations of brain, spinal cord and nervous system are laid.

24 days:   Heart begins to beat.

30 days:   Child has grown 10,000 times to 6-7 mm (1/4") long. Brain has human proportions. Blood flows in veins (but stays separate from mother's blood).

35 days:   Pituitary gland in brain is forming. Mouth, ears and nose are taking shape.

42 days:   Skeleton is formed. Brain coordinates movement of muscles and organs.  Reflex responses have begun. Penis is forming in boys. (Mother misses second period.)

43 days:   Brain waves can be recorded.

8 1/2 weeks:   Fingerprints are being engraved. Eyelids and palms of hands are sensitive to touch.

9 weeks:  Child will bend fingers around an object placed in the palm. Thumb sucking occurs. Fingernails are now forming.

10 weeks: Body is sensitive to touch. Child squints, swallows, puckers up brow and frowns.

11 weeks: Baby urinates, makes complex facial expressions - even smiles.

12 weeks: Vigorous activity shows distinct individuality. Child can kick, turn feet, curl and fan toes, make a fist, move thumbs, bend wrists, turn head, open mouth and press lips tightly together. Breathing is practiced.

13 weeks: Face is prettier, facial expressions resembling parents'. Movements are graceful, reflexes vigorous. Vocal chords are formed (but without air baby cannot cry).  Sex organs are apparent.

4 months:  Child can grasp with hands, swim and turn somersaults.

5 months: Sleeping habits appear, but a slammed door will provoke activity. Child responds to sounds in frequencies too high or low for adults to hear.

6 months:  Fine hair grows on eye brows & head. Eye-lash fringe appears. Weight is about 640g (22 oz.), height 23 cm (9"). Babies born at this age have survived.

5

> 7 months: Eye teeth are present. Eyelids open and close, eyes look around. Hands grip strongly. Mother's voice is heard and recognized.
>
> For more life development facts go to www.standtrue.com.

A true and accurate copy of the front and back side of this flier is attached as **Exhibit A**.

14. In addition to the distribution of the flier, Andrew wore a t-shirt, which on the front bore the message "Some Choices Are Wrong," and on the back read "Abortion Is Forever." Andrew also wore a symbolic red armband bearing the word "Silenced," and at certain times during the day Andrew wore a jacket that said "For Christ I Stand" on the back.

15. After school on October 24, 2006, Andrew encountered Defendant Principal Swack, handed him a flier, and told him that he wished to organize a pro-life student club at Millbrook High School.

16. On the next day, October 25, 2006, Principal Swack summoned Andrew to his office, and announced that he was forbidden to hand out any more fliers.

17. In discussing Andrew's speech with him, Principal Swack said that the leaflet distribution had to stop because other students may object to the content, or may consider the fliers to be religious in nature.

18. Principal Swack also threatened to force Andrew to remove his pro-life clothing in the event that any students complained about its content. Finally, Principal Swack expressed doubt about the acceptability of Andrew starting a pro-life club, explaining that he did not want other students to respond by starting a pro-choice club.

19. Principal Swack said nothing to Andrew about whether an application process existed by which Andrew could start a pro-life club (though such a process does exist), and he said nothing to Andrew about the permissibility of literature distribution before or after school, subject to a pre-approval process (as no such system had yet been concocted).

20. Defendants do not possess and have never made available to students or their parents any written standard that requires the restriction of student speech that Principal Swack announced to Andrew, and that was accomplished by Principal Swack's censorship of Andrew.

21. No material or substantial interference with the requirements of appropriate discipline in the operation of the school, nor interference with the rights of others had occurred as a result of the various forms of Andrew's speech described herein, nor did Defendants have a reasonable basis to identify Andrew's speech as presenting a risk of disruption, or otherwise as properly subject to prohibition.

## SCHOOL DISTRICT POLICY

22. Shortly after being censored by Principal Swack, Andrew contacted counsel to ascertain his rights, and counsel on November 13, 2006 sent a letter to Principal Swack in an effort to rectify his errors in judgment. On November 22, 2006, Defendant J. Richard Plaugher responded to the letter from Andrew's counsel, writing on behalf of Defendant Frederick County Public Schools. A true and accurate copy of Mr. Plaugher's letter in response is attached as **Exhibit B**.

23. In Mr. Plaugher's letter, he reiterated and expanded Defendants' censorship policy against Andrew's literature distribution (as discussed in detail below). Nevertheless, he did not attach any FCPS policies or standards governing the newly announced regime. Defendants do not possess and have never made available to students or their parents any written standard that requires the restriction of student speech that Mr. Plaugher announced, other than is found in Mr. Plaugher's letter itself. The rules outlined therein are referred to here as "the Policy."

24. The Policy gives Andrew only two options for literature "distribution." The

Policy does not define "distribution," or indicate what types of "distribution" acts fall prey to the Policy's onerous conditions.

25. First, the Policy indicates that recognized student groups (which have completed the application process so as to achieve recognized status) may post a sign "relating to the group's activities" on one (1) bulletin board in Millbrook High School, but only after the sign is "submitted to the principal for review before it is posted." The Policy does not describe or refer to standards governing the approval process for student group signage, nor does it define the restriction that signs must "relat[e] to the group's activities."

26. Second, the Policy subjects literature distribution "before the instructional day begins and after the instructional day ends" to an approval process by which Andrew must "submit the item of literature to the principal for review before the distribution takes place." Again, the Policy fails to describe or refer to standards governing this approval process, and fails to define the boundaries of the "instructional day."

27. In omitting any other options for student literature distribution, the Policy therefore bans every act of student literature "distribution" during the instructional day, such as during lunchtime or between classes.

28. In his letter, Mr. Plaugher presents and (not surprisingly) denies the truth of an incomplete rendition of Principal Swack's directive concerning Andrew's communicative clothing. Mr. Plaugher in his letter additionally designs Principal Swack's opposition to Andrew's petitioned pro-life student club as having simply been procedural, for (so he alleges) Andrew had not asked for permission to start a pro-life club, but rather had asked that the school start one.

29. Nonetheless, Mr. Plaugher conceded that Andrew may indeed legitimately accomplish his purposes with expressive clothing as well as a student pro-life club. Mr. Plaugher attached FCPS policies to the letter that explain the standards governing student-initiated clubs.

30. The only other written standard governing conduct of students in FCPS is its "Student Handbook." The Handbook does not contain provisions that would prohibit Andrew's speech in the forms and under the circumstances described herein, and does not contain or announce the existence of the Policy or any pre-approval process for student speech that is accomplished through literature distribution. A true and accurate copy of the Handbook is attached as **Exhibit C**.

## CONTINUING IMPACT OF DEFENDANTS' POLICY

31. Because of Defendants' Policy and practice censoring his speech, Andrew refrained from distributing pro-life literature up to the filing of this complaint. In particular, Andrew desired to distribute a flier criticizing abortion and "MTV," but refrained from doing so as a result of Defendants' censorship and the threat of punishment. A true and accurate copy of the flier Andrew desired to distribute on December 19, 2006, is attached as **Exhibit D**.

32. Andrew desires to continue to distribute literature in the manner related above, and communicate substantially the same message at Millbrook High School as has been related above. Specifically, Andrew desires to express a message in favor of preborn life on or around the anniversary of the *Roe v. Wade* abortion decision, January 22, 2007, by handing out the leaflet described above or one substantially similar. However, he fears the imposition of discipline by Millbrook High School officials or other agents of FCPS if he were to engage in such speech, so he intends to self-censor to avoid such penalty.

## VI.

## STATEMENTS OF LAW

33. Each and all of the acts herein alleged of the Defendants, their officers, agents, servants, employees, or persons acting at their behest or direction, were done and are continuing to be done under the color of state law, including the design and implementation of the prohibitions announced and enforced by Principal Swack, Director Plaugher, and the Frederick County Public Schools.

34. Unless and until the enforcement of Defendants' policies identified herein are enjoined, Andrew will suffer, and continue to suffer, irreparable harm to his constitutional rights.

## VII.

## VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
## (42 U.S.C. § 1983)

35. Plaintiff hereby incorporates by reference all foregoing allegations as if set forth fully herein.

### Freedom of Speech

36. Defendants' discriminatory treatment of Andrew's speech constitutes a content- and viewpoint-based censorship unjustified by a compelling government interest. By discriminating against the speech of Andrew because of the content and viewpoint of his speech, Defendants have violated and continue to violate his rights to the freedom of speech under the First Amendment.

37. Defendants' Policy, which requires the Principal's permission to be obtained prior to the distribution of literature by students before and after school, vests Defendants with unfettered discretion to decide whether to permit student speech, and does not provide in that

10

process appropriate procedural protections.  This program constitutes a prior restraint on Plaintiffs' speech in violation of the First and Fourteenth Amendments to the United States Constitution.

38. Defendants' restrictions on literature distribution, their Policy banning literature distribution during the "instructional day," and their Policy's prior restraint on speech before and after school, are overbroad, are unreasonable restrictions on the time, place, and manner of speech, lack a well-founded fear of material and substantial disruption of school discipline or functions, are not narrowly tailored to serve a significant governmental interest, and fail to leave open alternative channels of communication.

### Due process

39. Defendants have enforced their Policy and practices against Andrew in an *ad hoc* and arbitrary manner, detached from a fixed and identifiable policy standard.

40. Defendants' Policy and practices, both as written and applied to Andrew, are vague, such that they fail to provide persons of ordinary intelligence a reasonable opportunity to understand what conduct they prohibit, and they authorize and encourage arbitrary and discriminatory enforcement by Defendants.

41. This vagueness was and is exploited to infringe on Andrew's right to due process, and because of the impact on his speech, also on his right to the freedom of speech.

### Free exercise of religion

42. Defendants' Policy and Principal Swack's censoring imposition on Andrew discriminated against and regulated his speech because of its religious content and nature, and such action was not narrowly tailored to advance a compelling state interest.  Defendants' actions substantially burdened Andrew's religious exercise.

**Injury**

43.     As a direct result of Defendants' violation of Andrew's First and Fourteenth Amendment rights, as alleged herein, he has suffered a legal injury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment against Defendants and that this Court:

A.      Adjudge, decree and declare the rights and other legal relations of the parties to the subject matter in controversy in order that such declarations shall have the force and effect of final judgment and that the Court retain jurisdiction of this matter for the purpose of enforcing the Court's Orders;

B.      Pursuant to 28 U.S.C. §2201, declare that Defendants' past enforcement against Andrew of their speech prohibition Policy and practices was unconstitutional and violated his rights guaranteed under the First and Fourteenth Amendments to the United States Constitution;

C.      Pursuant to 28 U.S.C. §2201, declare that Defendants' Policy, as alleged above, violates on its face and as applied to Andrew the First and Fourteenth Amendments to the United States Constitution;

D.      Pursuant to 28 U.S.C. §2202, Fed. R. Civ. P. 65, and 42 U.S.C. §1983, preliminarily and permanently enjoin Defendants from enforcing against Andrew the unconstitutional speech prohibition Policy which infringes his rights to the freedom of speech, due process of law, and free expression of religion;

E.      Award damages to Andrew to vindicate his constitutional rights which were violated by Defendants;

  F. Pursuant to 42 U.S.C. § 1988 and other applicable law, award Plaintiff his costs and expenses of this action, including reasonable attorneys' fees;

  G. Grant such other and further relief as the Court deems equitable, just, and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury for all issues so triable in conformity with Rule 38(b) of the Federal Rules of Civil Procedure.

Dated: December 20, 2006
    Leesburg, Virginia

By Attorneys for Plaintiff:

_s/ H. Robert Showers_

| | |
|---|---|
| H. Robert Showers | Jeffrey A. Shafer* |
| Timothy P. Bosson | Matthew S. Bowman* |
| SIMMS SHOWERS, LLP | ALLIANCE DEFENSE FUND |
| 305 Harrison St., S.E., Third Floor | 801 G Street, N.W., Suite 509 |
| Leesburg, VA 20175 | Washington, DC 20001 |
| Telephone: (703) 771-4671 | Telephone: (202) 637-4610 |
| Fax: (703) 771-4681 | Fax: (202) 347-3622 |
| Email: hrshowers@simmsshowerslaw.com | Email: jshafer@telladf.org |
|    tpbosson@simmsshowerslaw.com |    mbowman@telladf.org |

                Benjamin W. Bull (of counsel)
                Chief Counsel
                ALLIANCE DEFENSE FUND
                15333 N. Scottsdale Road, Ste. 165
                Scottsdale, Arizona 85260
                Telephone: (480) 444-0020
                Facsimile (480) 444-0028

                *Pro hac vice application pending.*

## VERIFICATION OF COMPLAINT

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that I have read the foregoing Verified Complaint and the factual allegations thereof and that the facts alleged therein are true and correct.

Executed this 30 day of December, 2006 in _____, ____.

_____
Andrew Raker